## SOMERS v. STATE.

1. Where two laws containing inconsistent provisions were approved by the governor upon the same day, and it becomes necessary to know which was the later expression of the legislative will, the court may, of its own motion, examine the legislative journals, and take judicial notice of what they show.

2. Section 6, c. 56, Session Laws 1891, empowers the superintendent of public instruction "to appoint an assistant or deputy, who * * * shall perform such duties pertaining to the office as the superintendent may direct." A deputy or assistant so appointed has no fixed term of office, but holds at the pleasure of the appointing power.

3. Section 3, Art. 4, of the constitution, prohibiting the legislature from increasing or diminishing the compensation "of any public officer" "during his term of office," does not apply to such deputy or assistant so appointed.

(Syllabus by the Court. Opinion filed April 26, 1894.)

Original action in this court to recover from the state of South Dakota a salary as deputy superintendent of public instruction. Demurrer to complaint. Sustained.

The facts are stated in the opinion.

*J. F. Dillon,* for plaintiff.

The plaintiff, as deputy superintendent of public instruction of the state of South Dakota, was a public officer whose term of office expired when his principal's term expired. Board

of Supr., etc., v. Hackett, 21 Wis. 613; State v. Kalb, 50 Wis. 178.    The compensation could not be increased or diminished during his term of office.    Sec. 3, Art. 12, Const. S. D.    The act that creates the office of which plaintiff is incumbent fixed the salary but did not specify the fund from which it should be paid.    It then did not make the appropriation for payment but merely postponed payment until an appropriation should be made by the legislature.    Gilbert v. Moody, 25 Pac. 1092; State v. Kennedy, 26 Pac. 197; Humbert v. Dunn, 84 Cal. 57 (24 Pac. 111); State v. Hickmann, 23 Pac. 740.

The contention in this case arises from the fact that in the general appropriation act of 1891, the legislature appropriated $900.00 per annum as compensation for the deputy superintendent of public instruction, while the law which empowered the superintendent of public instruction to appoint a deputy, also passed in 1891, fixed the salary of said deputy at $1,200.    These two laws were approved upon the same day, and must be construed together as parts of the same act.    People v. Jackson, 30 Cal. 427; Potter's Dwarris Stat. and Const. p. 154; Mead v. Bagnal, 15 Wis. 161.    This case, therefore, does not come within the rule of Collins v. State, 2 S. D. 18.

*Coe I. Crawford, Attorney General,* for defendant.

KELLAM, J.    This is an original action against the state. In his complaint the plaintiff alleges that on the 9th day of January, 1891, he was duly appointed deputy superintendent of public instruction by the then superintendent of public instruction of the state, and that from that time to the 1st day of April, 1893, he duly performed the duties of said office or appointment; that during all that time he was entitled by law to be paid by the state for such service at the rate of $1,200 per annum; that he was only paid at that rate up to the 8th day of March, 1891; that from that time he has been paid at the rate of $900 per annum only, the auditor refusing to audit his account or draw his warrant at a greater rate, or for

the balance claimed to be due. He asks judgment against the state for the amount so shown to be due and unpaid. On behalf of the state the attorney general demurred, on the ground that the complaint does not state a cause of action. The pleadings present the question of plaintiff's right to recover upon the following conceded facts: Section 6, c. 56, Sess. Laws 1891, authorizes the state superintendent to appoint a deputy, "who shall receive a salary of $1,200. This law was approved by the governor March 9, 1891. The plaintiff, who became such deputy prior to the passage and approval of the law, but whose appointment is not questioned, performed the duties of such deputy from January 7, 1891, to April 1, 1893. Chapter 6, Sess. Laws 1891, which was the general appropriation law, and which was also approved March 9, 1891, provided (section 1): "That there is hereby appropriated the following sums of money, * * * for the purpose of paying the expense of the executive, legislative and judicial departments of the state; * * * Seventh. Office of superintendent of public instruction: For salary of deputy, for 1891, $900; for 1892, $900. * * * Section 32. All acts or parts of acts in conflict with the provisions of this act are hereby repealed." If it affirmatively appeared that chapter 6, with its appropriation and repealing clause, was passed by the legislature subsequent to said chapter 56, it would be difficult to distinguish this case, so far as the intended, and consequently the legal, effect is concerned, from Collins v. State (S. D.) 51 N. W. 776. In that case it was held that the legislature, by its subsequent action, plainly indicated its intention to repeal, or at least to temporarily suspend, the operation of the former law, with which the latter was inconsistent, and that, in legal effect, it did so. Here both laws were approved on the same date, and so went into effect at the same time. If the question of repeal is to be determined from the intention of the legislature, and the rule of the Collins case is correct, it is important to know, if it can be done, which was the later expression of the legislative design. It was urged

in argument that there is nothing in the record, and nothing of which the court is required to take judicial knowledge, from which this can be ascertained. It is doubtless true that courts will not ordinarily take judicial notice of the legislative proceedings, as shown by the journals of the different houses; but it is equally true that, where a question is presented which can only be intelligently decided upon information contained in such journals, the court, of its own motion, will examine them, if necessary, and take judicial notice of their contents. This doctrine was very directly held and acted upon in Edger v. Board, 70 Ind. 331, where it was announced that "the respective journals of the senate and house of representatives, containing the proceedings in reference to a bill enacted into a statute, may be looked to by the courts to ascertain the intention of the legislature in enacting such a statute, if it be ambiguous." In Blake v. Bank, 23 Wall. 307, the court determined the meaning and effect of an act of congress from what it found in the journals of the senate and house. In Fosdick v. Village of Perrysburg, 14 Ohio St. 472, the same license was indulged, where, as in the case at bar, it was important to ascertain the intent of the legislature with reference to another act. Where, as in the case now before us, it is impossible to determine which of two inconsistent provisions, approved by the governor on the same day, is the operative law, without knowing which is·in fact the later expression of the legislative will, we think it not only competent, but the duty of the court, to consider the legislative journals, to ascertain, if possible, which was the repealed and which the repealing act. The law which they had already passed was presumptively in the minds of the legislators when they considered and enacted the second one, and such spoke the legislative mind on and from the day they passed it. Induced, and, as we think, justified, by these considerations, we have examined the journals of the houses, and find that chapter 56, by which the salary of the deputy superintendent was fixed at $1,200, passed both houses of the

legislature on the 4th day of March, 1891, and that chapter 6, with its repealing clause, passed the house on the 5th, and the senate on the 6th, of the same month. Following Collins v. State, *supra* the later act repealed the earlier one; and when the governor approved the repealing statute he had no power to reinstate the repealed provision by simultaneously or even subsequently, signing the act in which such provision was contained. Southwark Bank v. Com., 26 Pa. St. 446. But the plaintiff contends that section 3, art. 12, of the constitution, declaring that "the compensation of no public officer shall be increased or diminished during his term," was a plain prohibition upon the legislature from passing a law reducing his salary from $1,200 to $900. This contention is not correct, for the reason that under the law plaintiff had no "term." He was simply appointed by the superintendent under the power conferred by section 6, c. 56. The law fixed no time for the continuance of such appointment. He had no title or tenure to the office beyond the pleasure of the appointing power. The word "term," when used in reference to the tenure of office, means, ordinarily, a fixed and definite term, and does not apply to appointive offices, held at the pleasure of the appointing power. Mechem, Pub. Off. § 385; Gibbs v. Morgan, 39 N. J. Eq. 128; Speed v. Crawford, 3 Metc. (Ky.) 207. We cannot assent to the theory of the plaintiff, that by virtue of the law and his appointment under it his term was coextensive with that of the superintendent who appointed him. Our conclusion is that the demurrer to plaintiff's complaint must be sustained, and it is so ordered. The plantiff may have 40 days within which to amend his complaint, if so advised.