# STATE *ex rel.* MATLACK v. OKLAHOMA CITY.

No. 4546. Opinion Filed June 10, 1913.

(134 Pac. 58.)

MUNICIPAL CORPORATIONS.— Assistant Municipal Counselor— "Term of Office." An assistant municipal counselor, a municipal officer, appointed by the board of commissioners of the city of Oklahoma City " * * * for a period of two years, but subject to removal at any time by a vote of four-fifths of all the commissioners," is subject to removal at the pleasure of said board, and has no "term of office," within the meaning of Const. art. 23, sec. 10, providing that in no case shall the salary of any

public official be changed after his appointment during his term of office.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*
*W. R. Taylor, Judge.*

Application by the State, on the relation of George A. Matlack, for writ of mandamus against the city of Oklahoma City. Judgment for defendant, and plaintiff brings error. Affirmed.

*R. M. Campbell, Claude Nowlin,* and *Geo. A. Matlack,* for plaintiff in error.

*J. W. Johnson,* for defendant in error.

TURNER, J.    From an order of the district court of Oklahoma county rendered and entered October 14, 1912, denying the prayer of plaintiff in error and refusing to issue a peremptory writ of mandamus against defendant in error, plaintiff brings the case here. The alternative writ and return thereto disclose the facts to be: That on July 15, 1911, plaintiff was duly elected assistant municipal counselor of the city of Oklahoma City, an office created by the city charter which, besides prescribing his duties, fixed his tenure of office; that prior to his election the salary of the office was by ordinance fixed at $200 a month payable monthly in warrants drawn upon the salary fund of the city; that he was the first person elected as such by the board of commissioners; that he qualified and served as such until July 22, 1912; that a short time prior thereto the mayor and commissioners of the city passed an emergency ordinance known as No. 1668, section 6 of which purported to change the salary from $200 a month to $1 a month beginning with the month of August; that after the passage of said ordinance plaintiff was ordered in writing by the mayor to discontinue his services, and was not permitted to perform the duties of said office during that month; that a warrant for $1 was certified and issued in full of his salary for August, which he refused to accept, and then filed his

claim for $200, pursuant to the ordinance fixing his salary at said sum, which was rejected, whereupon he brought this suit, the object of which is to compel the issuance to him of a salary warrant for $200 for the month of August, 1912.

The charter provides:

"Sec. 15. The board of commissioners shall, at their first meeting or as soon as practicable thereafter, elect by a majority vote the following officers: Municipal counselor, assistant municipal counselor. * * * The board of commissioners shall, by ordinance, fix and prescribe the salaries and duties of the several offices, officers, and employees by them created and appointed. .

"Sec. 16. The first officers appointed in each department under this charter shall be nominated by the heads of each of the five departments, and confirmed by a majority vote of the board of commissioners. The board of commissioners may from time to time, by a majority vote, create or discontinue offices and municipal employments and prescribe and alter the compensation of any officer or employee of the city, except members of the board. * * *

"Sec. 17. All officers to be elected by the commissioners shall be selected in the following manner: The commissioner in whose department the duties of the officer are to be performed shall nominate him, and said nomination must be confirmed by the vote of at least three commissioners. Said appointees so elected by the commissioners shall hold their offices for a period of two years, but subject to removal at any time by a vote of four-fifths of all the commissioners."

Plaintiff's contentions are, in effect, that section 6 of Ordinance 1668, which purports to change his salary from $200 per month to $1 per month is void, as in conflict with article 23, section 10, of the Constitution, which provides: "* * * in no case shall the salary * * * of any public official be changed after his election or appointment, or during his term of office, unless," etc., and that mandamus is his remedy to compel the payment of his salary as fixed by the prior ordinance.

Assuming that mandamus is the proper remedy, and that plaintiff, under his appointment, was a "public official," within

the contemplation of said section, his contention that he had a "term of office" cannot be sustained. This for the reason that the word "term" when used in this connection refers to a fixed and definite time and does not apply to an appointive office held at the pleasure of the appointing power. *Speed et al. v. Crawford,* 3 Metc. (Ky.) 207; *People v. Tierney,* 31 App. Div. 309, 52 N. Y. Supp. 871; *Ida Co. Sav. Bk. v. Seidensticker* (Iowa) 92 N. W. 862; *Somers v. State,* 5 S. D. 321, 58 N. W. 804.

Concerning his tenure of office, section 15 of the ordinance, *supra,* vests the board of commissioners with power, at their first meeting, to elect an "assistant municipal counselor." This section 16 directs to be done upon the nomination of the head of the department to which he will belong when elected, and his nomination, when confirmed by a majority vote of the board, will constitute his election, or rather his appointment. After reiterating this as to "all officers to be elected by the commissioners," section 17 provides:

"* * * Said appointees so elected by the commissioners shall hold their offices for a period of two years, but subject to removal at any time by a vote of four-fifths of all the commissioners."

Being subject to removal at any time, with or without cause, the office, being appointive, was held at the pleasure of the appointing power and one without a "term" within the contemplation of the section of the Constitution relied upon.

In *Speed et al. v. Crawford, supra,* a statute which created the office of commissioners of the police board of a city, and provided that they might be removed at the pleasure of the chancellor and that they must be removed under certain circumstances, was assailed as unconstitutional. The court, in inquiring whether the act sufficiently or at all prescribed the term for which the officers in question were to hold their offices, said:

"Can it be said that the incumbents hold their offices for a term within the well-understood and plain import of all the provisions of the Constitution which prescribed the

term of the various offices therein mentioned, and which authorize the Legislature to prescribe by law the terms of other offices? We think not. It is deemed unnecessary to refer specially to the numerous provisions alluded to for the purpose of demonstrating that the word 'term' is uniformly used to designate a fixed and definite period of time. *Trustees of Owensboro v. Webb, supra,* [2 Metc. (Ky.) 576], and *Barbee v. Speed,* MS. Opin., June Term, 1855."

In *State ex rel. v. Johnson* (Mo.) 25 S. W. 855, an alternative writ of mandamus issued against the auditor of the city of St. Joseph to compel him to countersign relator's salary warrant for services rendered as chief engineer of the fire department of the city. The facts disclose that relator was duly appointed to that office in 1886 and had held it ever since; that at that time his salary was $1,200 a year, payable monthly, which had been increased by ordinance several times during the years intervening between his appointment and April, 1893; that at that time an ordinance was enacted increasing his salary from $1,800 to $2,100 a year, and another passed appropriating funds to pay the increased salary; that in 1890 and 1892 the city fixed the salary of the chief of the fire department at $1,800 a year; that he continued in office under his original appointment until July, 1893, when he was reappointed, and at the time of the suit was in office by virtue of his last appointment. It was contended by relator that he was an employee and entitled to the increased salary. On behalf of the city it was contended that the increase made by ordinance in 1893 was void, because in conflict with section 8, article 14, of the Constitution, which reads: "The compensation or fees of no state, county, or municipal officer shall be increased during his term of office," etc. An ordinance in force in the city, and relied on by defendant, provided that the term of all officers not otherwise fixed by law or ordinance should be for two years. The Revised Statutes of 1889, section 1434, in effect provided that the common council might appoint and pay during their

pleasure a competent number of firemen and among them a chief engineer of the fire department. Under this statute the court said that, all being appointed the same way and by the same authority and for the same purposes, they all might be removed in the same way without notice or hearing. That as they were all appointed at the pleasure of the common council, it necessarily followed that they might be removed the same way. The court also said:

"Counsel for relator concede in their brief that he is a public officer, within the meaning of the general definition of a public officer, and that he performs public duties, and offices and functions of a public character; but they contend that he is not an officer, within the meaning of the section of the Constitution quoted. It will be observed that this section of the Constitution only embraces within its provisions officers who are elected or appointed for some specific or definite time, and that it has no application whatever to the case in hand, when the relator's term of office is not fixed by any law or ordinance, and when he simply holds at the pleasure of the appointing power. This is manifest from the fact that it also provides that the term of office shall not be extended for a longer period than that for which such officer was elected or appointed.' The relator was not elected, nor was he appointed, for any definite time. There does not seem to be room for argument in regard to the proper meaning of this section, so plain is it in its construction"

—and denied the writ. See, also, *Board of Com., etc., v. Hart*, 29 Okla. 693, 119 Pac. 132, 37 L. R. A. (N. S.) 388.

Volume 8 of Words and Phrases, p. 6920, cites *Lexington v. Rennick*, 105 Ky. 779, 49 S. W. 787, 50 S. W. 1106, as construing the section of the Constitution under construction in the Johnson case, and as holding that said section refers to a fixed period of time and applies only to officers having a specific term, and hence does not forbid the reduction of the salary of the policemen removable by the board of police commissioners at pleasure. Speaking to the purpose of the provision, the court in that case said:

"It was designed to protect an officer during his term in the enjoyment of the compensation attached to it when he was

elected, and prevent his appealing to the city authorities for more; but it can have no reasonable application to an officer who may be turned off at pleasure, because, if the city may turn him off and then hire him or somebody else any day at another price, we see no reason why it may not reach the end directly, and cut his salary down in the first place. Such constitutional provisions are common and are uniformly, so far as we have seen, confined to officers having definite terms. Mechem on Public Officers, section 858."

We have been unable to find a case construing an act fixing the tenure of office precisely as here. The nearest approach thereto is *White v. Mears*, 44 Ore. 215, 74 Pac. 931, and *State ex rel. Rumbold v. Gordon*, 238 Mo. 168, 142 S. W. 315, Ann. Cas. 1913A. 312. In the former, an act approved February 24, 1903 (Laws 1903, p. 238), created a board of commissioners for licensing sailors' boarding houses and named the personnel of the board and provided that the members thereof might be removed at any time for cause or otherwise by the Governor, secretary of state, and state treasurer. For the reason that the act failed to prescribe their term of office, it was contended that the same was unconstitutional and in violation of section 2, article 15, which reads:

"When the duration of any office is not provided for by this Constitution, it may be declared by law; but if not so declared, such office shall be held during the pleasure of the authority making the appointment. But the Legislative Assembly shall not create any office, the tenure of which shall be longer than four years."

Construing the two provisions together, in the syllabus it is said:

"The commissioners for licensing sailors' boarding houses, appointed by the Legislature (Laws 1903, p. 238), hold their office at the pleasure of the appointing power during four years, unless sooner removed, so that, even if they are officers whose positions are created by the Legislature, they are not holding in violation of Const. Ore. art. 15, sec. 2, prohibiting the creation of any office, the tenure of which shall be longer than four years."

*State ex rel. Rumbold v. Gordon, supra,* was mandamus by the adjutant general, who contended that his salary as such was $2,500 per annum, to compel respondent, the state auditor, who contended that it was but $2,000 per annum, to audit and pay his salary at the former sum. The Constitution (section 8, article 14) read: "The compensation or fees of no state, county, or municipal officer shall be increased during his term of office," etc. It was contended by the auditor that the adjutant general had a term of office, and that his salary could not be increased from the latter to the former sum. The case turned upon the question whether the adjutant general had a "term of office" within the contemplation of said section of the Constitution. In passing on the question, the court said:

"Considering the terms of the law of 1905, under which relator was appointed, does he have a 'term of office' in a constitutional sense? Clearly, no. The statute provides that the adjutant general shall be appointed by the Governor, that he shall be military secretary to the Governor and that he 'shall hold office during the term of the Governor and may be removed by him at his pleasure.' If the statute had said he should hold office 'during the term of the Governor' and had broken off at that point he would have a different case to deal with. In such case his term would have the same boundaries as the Governor's term. By referring to this certainty, the term of the adjutant general would be made certain, and the maxim, *'Id certum est,'* would control the situation. But the law does not break off there and neither should we in the exposition of it. It goes on to say in the same breath that the Governor may remove him at 'his pleasure.' The Governor's breath, under the law, made him, and the Governor's breath is left to unmake him. The appointing power has left to it the disappointing power unchecked, free of limit in time, place, or circumstance. No man who holds office at the pleasure of another can be said to have a certain fixed term of office. The two ideas are radically antagonistic, and in right reason they cannot both apply at the same time to the same thing. The Governor's 'pleasure' has no fixed bounds discernible to the judicial eye. * * * Our learned Attorney General makes an ingenious argument against such construction. As we grasp it, his contention is that rela-

tor's term of office has a fixed and definite tenure, to wit, that of the Governor, and that the removal part of the statute brings into view a new and independent matter, viz., the power of removal which may be exercised at pleasure. But we do not think a fair construction of the law allows it to be taken apart and then joined together so as to make of it two independent provisions. The clause in hand is inseparable, relates to the same subject-matter, and what the Legislature hath joined together we ought not put asunder. Our conclusion is an absolute writ of mandamus should go on the return of respondent."

And so, when the commissioners said as they did in effect, when they appointed plaintiff to this office, that he might hold it for two years, "but subject to removal at any time by a vote of four-fifths of" their number, his term of office might be likened to that of one who is permitted to enter the tenement of another for two years, with the understanding that he was to vacate at any time on request of his landlord. It is needless to say that his tenancy would not be for a term of two years, but would be for no term at all.

In *State ex rel. Townsend v. Boughner,* 55 N. J. Law, 380, 26 Atl. 808, Beasley, C. J., speaking for the court, said:

"In case of an office held during the pleasure of another, the official term—that is, the continuance of the incumbency— is uncertain and unfixed until the mandate of removal has been issued; and such is the common justification of the phrase in question. No lawyer would say that a tenant at will held for a fixed term, nor would a historian declare that, prior to the revolution, an English judge, being removable at the will of the King, was entitled to his judicial position for a term that was fixed."

It follows that plaintiff is not within the protection of the Constitution (article 23, sec. 10), and that the judgment of the trial court must be affirmed. It is so ordered.

All the Justices concur.